IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CORRINE JACOX | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | 5:06-CV-182-HL |
| ROBERT M. GATES, SECRETARY | : | |
| OF DEFENSE | : | |
| | : | |
| Defendant. | : | |
| | : | |

# ORDER

Before the Court are Defendant's Motion for Summary Judgment (Doc. 25) and Plaintiff's Motion to End Discovery and Set a Trial Date (Doc. 24). For the following reasons, Defendant's Motion is granted and Plaintiff's Motion is denied as moot.

## I.   FACTS AND PROCEDURAL HISTORY[1]

---

[1] Pursuant to Local Rule 56, a party moving for summary judgment is required to attach to the motion "a separate and concise statement of the material facts to which [it] contends there is no genuine issue to be tried." Middle District of Georgia, Local Rule 56. The nonmoving party is then required to respond to each of the movant's numbered material facts. Id. All material facts not controverted by the nonmoving party are deemed admitted. Id. In this case, Defendant complied with Local Rule 56 by attaching its Statement of Material Facts to its Motion. Plaintiff, however, did not respond to each of Defendant's numbered material facts. As a result, all material facts set forth in Defendant's Statement of Material Facts are deemed admitted. However, not every statement of material fact will be accepted by this Court. Only those statements that are supported by the record will be adopted. Furthermore, statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the Court. Last, Plaintiff's Response to Defendant's Motion for Summary Judgment contests some of the factual assertions contained in affidavits submitted by Col. Udemi and Donna Fielder. Plaintiff's challenges to the affidavits consist mostly of unsupported, conclusory assertions; however, this Court will not accept statements made in the affidavits to the extent that Plaintiff has pointed to specific evidence in the record that contradicts them.

### A. Factual History

Plaintiff Corrine Jacox has been employed by the federal government since 1986 when she started as a GS-3 clerk working at the Defense Distribution Depot in Memphis, Tennessee. (Jacox Dep. p. 10). She is currently employed by Defense Logistics Agency ("DLA") at the Defense Distribution Depot-Warner Robins, Georgia ("DDWG") as a GS-12 Accountable Officer ("AO"). (Id. at pp. 23-24). The DLA is a Department of Defense ("DOD") agency that provides worldwide logistics support, primarily to the United States Armed Forces. The DDWG is one of the DLA's twenty-six satellite distribution centers around the world. The operations and management of the DDWG are contracted to private companies, but the DDWG still employs a small number of DOD civilian employees to oversee the supply and distribution functions. (Udemi Aff. ¶ 2). As an AO, Plaintiff is responsible for various inventory processes at the DDWG, including preparation of a monthly inventory report that communicates the DDWG's status to its headquarters. (Jacox Dep. at pp. 24-26). Plaintiff has been the AO since she left her prior job at Kings Bay Naval Base in June 2002. (Id. at pp. 16, 22-23).

In April 2003, Col. Joseph Udemi was assigned as the Commander of the DDWG. (Udemi Aff. ¶ 3). At that time, Steve Baker was the Deputy Commander and Donna Fielder was the Contracting Officer Representative ("COR"). (Id.). Baker was not an effective Deputy Commander, and he was transferred to another location in May 2004. (Id.). Nobody immediately filled the position that Baker left vacant, but Fielder took on additional responsibilities to assist Col. Udemi with managing the organization. (Id. at ¶ 4). According

to Col. Udemi, he frequently called upon Fielder to assist him because she had demonstrated a high degree of competence in performing her job. (Id.). In his words, Fielder was the "go to person" at the DDWG. (Id.).

In August 2004, the DLA published a Job Opportunity Announcement for the Deputy Commander position. (Id. at ¶ 6). An amended announcement was subsequently posted due to a technical defect.[2] (Udemi Aff. ¶ 6). After DLA posted the announcement, the Chief of Staff of the Defense Distribution Center ("DDC") selected a panel of three people to review the applications for the Deputy Commander position, to conduct interviews, and to make a recommendation to the DDC's Deputy Commander as to which candidate should be hired. (Udemi Aff. ¶ 7). The members of the panel were Col. Udemi, Robert King, and Richard Johnson. (Id.). King was the Deputy Commander for the Defense Distribution Depot-Norfolk, Virginia, and Johnson was the Lead Supply Management Specialist for DDC. (Id.). DLA's Human Resources Department then forwarded to the panel members a list of eligible applicants for the position. (Id. at ¶ 8). The list contained the names of eighteen qualified individuals, including Plaintiff and Fielder. (Id.).

Before the panel selected the candidates to be interviewed, Col. Udemi sent an email to the panel members to provide them with some background information about the DDWG, the reasons for Baker's departure, and the characteristics that Col. Udemi believed the next Deputy Commander should possess. (Id. at ¶ 9). These characteristics included maturity, leadership ability, firmness, and experience in supply and distribution. (Udemi Aff. Ex. A).

---

[2]Plaintiff contests this fact, but Plaintiff has pointed to nothing in the record to controvert it.

In the email, Col. Udemi told the panelists that he had worked with four of the applicants, including Plaintiff, and that he would remove himself from the selection process if that created a problem. (Udemi Aff. ¶ 9). None of the other panel members requested that he remove himself, and Col. Udemi remained a panelist. (Id.).

After reviewing all of the candidates' applications, each panelist selected the top four candidates who they thought should be interviewed. (Id. at ¶ 10). Fielder and one other candidate were in each panelist's top four, and therefore, they were selected to be interviewed. (Id.). The members then selected the remaining two candidates to be interviewed based on how each panelist ranked the candidates. (Id.). Plaintiff was not in any of the panelist's top four, and therefore, she was not selected to be interviewed. (Id.). The four candidates who were selected to be interviewed were Fielder, David Gambrell, Col. Ned LaViolette Jr., and Dale Gill. (Udemi Aff. Ex. B). The panelists then interviewed the four candidates and ranked them one through four. (Udemi Aff. ¶ 11). Fielder was the first recommendation. (Id.). The panel forwarded its recommendations to the DDC's Deputy Commander, and Fielder was promoted to the Deputy Commander position on November 21, 2004. (Id.; Fielder Aff. ¶ 1).

After Fielder was promoted, Plaintiff filed a charge of discrimination with the DLA's Equal Employment Opportunity ("EEO") office, alleging that she was discriminated against when she did not receive the promotion. Around the same time, Plaintiff's husband, Willie Jacox, started to conduct his own investigation of Fielder's promotion. Using the alias "The Phantom," Mr. Jacox called another DDWG employee and said that he was investigating Fielder's promotion. (Udemi Aff. ¶ 14). Mr. Jacox called the employee again and stated that

4

Fielder's selection was being investigated and asked the employee if she would be willing to cooperate. (Id.). The employee refused and hung up. (Id.). The employee who received these phone calls from Mr. Jacox reported the incidents to Col. Udemi. (Id.). At that time, Col. Udemi discovered that another DDWG employee had been receiving unwanted emails and telephone calls from Mr. Jacox. (Id.). Accordingly, Col. Udemi relayed this information to the 78th Security Forces Squadron at Robins Air Force Base, which conducted an investigation into these matters. Col. Udemi took no further action, and the investigation did not result in any legal or disciplinary action being taken against Plaintiff or Mr. Jacox. (Jacox Dep. p. 96).

In addition, after Plaintiff filed her EEO complaint, (1) Plaintiff was asked to change offices, (2) she received a "letter of warning" regarding an untidy work area, and (3) she was questioned about her overtime requests. First, Plaintiff changed offices after she accepted an offer to move to a different office.[3] (Udemi Aff. ¶ 12). Second, Plaintiff received a "letter of warning" from Fielder regarding her untidy work area. (Fielder Aff. ¶ 7). The letter of warning resulted in no disciplinary action and did not go in Plaintiff's personnel file. (Id.). Last, Plaintiff was questioned about some of her overtime requests, but it is undisputed that Plaintiff was never denied any overtime that she requested. (Id. at ¶ 8).

## B. Procedural Background

In March 2006, the DLA concluded its investigation of Plaintiff's EEO charge and found that Plaintiff was not discriminated against. Plaintiff's EEO charge included claims of

---

[3]Plaintiff's only allegation regarding her office change is that Col. Udemi and Fielder ordered Plaintiff to move from the office that had been specially prepared for her. (Pla.'s Compl. at p. 6).

disparate treatment and retaliation. The DLA issued Plaintiff her right to sue letter, and Plaintiff filed suit in this Court on May 30, 2006, against multiple defendants, including Col. Udemi, Fielder, the Secretary of Defense, and the Department of Defense. In her Complaint, Plaintiff asserted, inter alia, employment discrimination claims under 42 U.S.C.A. § 1983, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act ("ADEA").[4] On November 9, 2006, Defendants filed a Motion to Dismiss (Doc. 18), which this Court granted in part (Doc. 30). This resulted in the dismissal of all of Plaintiff's claims except for Plaintiff's Title VII and ADEA[5] claims against Robert M. Gates, Secretary of Defense.

Plaintiff's Title VII and ADEA claims consist of disparate treatment and retaliation claims. As to the disparate treatment claims, Plaintiff contends that she was discriminated against on the basis of race, gender,[6] and age when (1) she was not selected to serve as the "acting" Deputy Commander after Baker's departure, and (2) when she was not promoted to Deputy Commander. As to the retaliation claims, Plaintiff contends that she was retaliated

---

[4] Plaintiff does not assert an ADEA claim in her Complaint, but she did file a charge of age discrimination in her EEO charge, which is attached to her Complaint. This Court reads the attached EEO charge to be part of Plaintiff's Complaint, and therefore, Plaintiff has asserted an age discrimination claim.

[5] In this Court's Order dismissing most of Plaintiff's claims, the Court stated that only Plaintiff's Title VII claims remained. This was a mere oversight and the Order did not result in the dismissal of Plaintiff's ADEA claim. Moreover, the Defendant apparently agrees that the Order did not dispose of Plaintiff's ADEA claim because it addresses the claim in its Brief in Support of Motion for Summary Judgment.

[6] Plaintiff's gender discrimination claim does not appear in her Complaint, but she did file a charge of gender discrimination in her EEO charge. Reading Plaintiff's EEO charge to be a part of Plaintiff's Complaint, this Court finds that Plaintiff has asserted a gender discrimination claim.

against for filing an EEO charge when (1) her husband was investigated, (2) she was asked to change offices, (3) she received a letter of warning regarding her untidy work area, and (4) she was questioned about her overtime requests.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B. Title VII Claims

#### 1. Disparate Treatment Claims

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1) (West 2003). A Title VII plaintiff may attempt to show this discrimination through either direct or circumstantial evidence. Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999). Direct evidence of discrimination is evidence that "'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" Id. (quoting Burrell v. Bd. of Trustees of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997)) (alterations in original). Direct evidence consists only of "'the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." Id. (quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)).

In this case, Plaintiff has produced no direct evidence, and therefore, she must establish her discrimination claim by relying on the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Under this framework, a Title VII claimant must first establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) similarly situated employees outside of her protected class were treated more favorably; and (4) she was qualified to do the job. Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). To establish a prima facie case in a failure to promote case, the plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was not promoted; and (4) someone outside her protected class was promoted.[7] Walker v. Mortham, 158 F.3d 1177, 1186, 1193 (11th Cir. 1998).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason ("LNR") for its employment action.[8] Burke-Fowler, 447 F.3d at 1323. If the defendant articulates an LNR, the burden shifts back to the plaintiff to show that the defendant's proffered reason for the adverse action is

---

[7]There is an intracircuit split in the Eleventh Circuit as to whether the fourth element of a plaintiff's prima facie case in a failure to promote case requires the plaintiff to show that the employee who received the promotion was equally or less qualified than the plaintiff. For the reasons stated in Ferguson v. Ga. Dept. of Corrections, 428 F. Supp. 2d 1339, 1355 n.21 (M.D. Ga. 2006), this Court does not require that the plaintiff making this showing as part of her prima facie case; the plaintiff need only show that someone outside her protected class received the promotion.

[8]The defendant's burden at this stage is a burden of production. See Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th cir. 2005).

9

pretextual. Id. The plaintiff can prove pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Jackson, 405 F.3d at 1289 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 256).

Here, Plaintiff has not established a prima facie case of gender discrimination. Plaintiff and Fielder are both females. As a result, Plaintiff has failed to establish that a member outside of her protected class was treated more favorably than her. This Court recognizes that in appropriate cases a Title VII plaintiff can establish a prima facie case without showing that a member outside of her protected class was treated more favorably. See Howard v. Roadway Exp., Inc., 726 F.2d 1529, 1534 (11th Cir. 1984) (holding that "proof that the employer replaced the fired minority employee with a non-minority employee is not the only way to create" an inference of discrimination). In this case, however, Plaintiff has not produced any evidence whatsoever that establishes a prima facie case of gender discrimination. As a result, Defendant is entitled to summary judgment on Plaintiff's gender discrimination claim.

Defendant is also entitled to summary judgment on Plaintiff's disparate treatment race discrimination claims. Plaintiff has asserted two disparate treatment claims. Plaintiff first contends that she was discriminated on the basis of race when she was not given the opportunity to serve as the "acting" Deputy Commander at DDWG. Essentially, Plaintiff contends that she was discriminated against when Fielder was allowed to perform some of the Deputy Commander's duties during the time the position was vacant after Baker's departure. According to Plaintiff, this gave Fielder more visibility, which ultimately led to her being

promoted. Plaintiff's second disparate treatment claim asserts that she was discriminated on the basis of race when she was not promoted to the Deputy Commander position.

First, Plaintiff cannot establish a prima facie case on her claim that she was discriminated against on the basis of race when she was not allowed to serve as the acting Deputy Commander. Plaintiff did not suffer an adverse employment action by the fact that Fielder was allowed to perform additional assignments after Baker departed. In <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232 (11th Cir. 2001), the plaintiff contended, inter alia, that he was discriminated against in violation of Title VII when his work assignments changed. <u>Id.</u> at 1240. The Eleventh Circuit held that the changes did not rise to the level of an adverse employment action because the changes did not cause any tangible harm to the employee. <u>Id.</u> The Court recognized that although demotions are actionable under Title VII, the plaintiff in the case before it did not suffer a demotion. <u>Id.</u> at 1240, 1243. The Court concluded by noting that a change in work assignments would rise to the level of an adverse employment action only in unusual instances. <u>Id.</u> at 1245.

In this case, Plaintiff does not even contend that her job assignments changed. Instead, Plaintiff contends that she was discriminated against because Fielder was allowed to perform certain tasks normally assigned to the Deputy Commander position. Plaintiff, however, cannot demonstrate that she suffered any tangible harm by Fielder's change in work assignments. Rarely does an employee's own change in job assignments constitute an adverse employment action. <u>Id.</u> This Court thinks that it would therefore be an even rarer situation for a third-party employee's change in job assignments to constitute an adverse employment action. As a

11

result, this Court finds that Fielder's change in work assignments did not constitute an adverse employment action against Plaintiff. See also Allen v. Mich. Dept. of Corrs., 165 F.3d 405, 409-10 (6th Cir. 1999) (holding that defendant's failure to allow corrections officer to serve as "acting sergeant" in regular sergeant's absence did not constitute an adverse employment action).

Moreover, Defendant would still be entitled to summary judgment on this claim even if this Court found that Plaintiff suffered an adverse employment action. Defendant's LNR for allowing Fielder to perform some of the functions of the Deputy Commander position is that Fielder was more qualified than Plaintiff. This is the exact same LNR that Defendant has articulated to rebut Plaintiff's prima facie case on her failure to promote claim. For the reasons stated below in this Court's discussion of Plaintiff's failure to promote claim, Plaintiff has failed to establish that Defendant's LNR is pretextual. As a result, Defendant is entitled to summary judgment for this additional reason..

As to Defendant's failure to promote claim, Defendant is entitled to summary judgment because Plaintiff cannot establish that Defendant's LNR is pretextual. Plaintiff has established a prima facie case on this claim: (1) she is African-American; (2) she was qualified and applied for the promotion; (3) she was not promoted; and (4) Fielder, who is not African-American, received the promotion. Defendant's LNR for promoting Fielder instead of Plaintiff is that Fielder was more qualified. Because Defendant has articulated an LNR, the burden is on Plaintiff to demonstrate pretext. Plaintiff contends that Defendant's LNR is pretextual because she was more qualified than Fielder for the position in question. Specifically, Plaintiff

12

contends that she was more qualified because (1) she possesses a four-year college degree and Fielder does not, and (2) she had more work experience relevant to the Deputy Commander position than Fielder. A plaintiff in a Title VII case, however, cannot show pretext by merely showing that she was more qualified than the employee who actually received the promotion. Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004). Disparities in qualifications can only be used to show pretext if those disparities are "'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" Id. (quoting Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000)).

Here, Plaintiff has not offered evidence showing that she is "'so clearly more qualified for the position than [Fielder] that a reasonable juror could infer discriminatory intent from the comparison.'" Id. (quoting Lee, 226 F.3d at 1255). Though Fielder does not possess a college degree, an employee who possesses a college degree is not necessarily more qualified than an employee who does not. See Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (per curiam) (holding that the plaintiff's possession of a college degree was insufficient by itself to establish that she was more qualified than another employee who did not possess a degree). "'Personal qualities ... factor heavily into employment decisions concerning supervisory or professional positions. Traits such as common sense, good judgment, originality, ambition, loyalty, and tact often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position.'" Id. (quoting Denney v. City of Albany, 247 F.3d 1172, 1186 (11th Cir.

13

2001)). An employer can rely on a subjective reason for promoting an employee "if the [employer] articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000). When an employer's subjective view of an employee's qualifications is the basis for a promotion decision, the plaintiff must provide evidence to establish that the employer used subjective hiring criteria as a mask for discrimination. Springer, 509 F.3d at 1349 (citing Denney, 247 F.3d at 1185).

Defendant asserts that Fielder was more qualified than Plaintiff because Fielder had ten years more experience in government, more experience at DDWG, and she had demonstrated a greater degree of understanding and competence. Defendant has pointed to specific evidence in the record in support of its subjective view of Fielder's competence relative to Plaintiff's. As the COR, Fielder performed many tasks that demonstrated her ability to handle the role of Deputy Commander. According to Col. Udemi, she, among other things, (1) demonstrated a superior understanding of DDWG's distribution process, (2) communicated in a straightforward and appropriate fashion, (3) understood all of DDWG's job functions, and (4) demonstrated a willingness to hold contractors liable. (Udemi Aff. ¶ 4). Plaintiff has not pointed to anything in the record that controverts Col. Udemi's assessment of Fielder's job performance. In her Response, Plaintiff makes conclusory assertions that Col. Udemi's assessment of Fielder demonstrates discrimination, bias, and personal favoritism. At the summary judgment stage, however, Plaintiff cannot create a genuine issue of material fact by relying on the conclusory allegations contained in her Response to Defendant's Motion. As

a result, this Court accepts as true the statements in Col. Udemi's affidavit regarding Fielder's qualifications.

In contrast, Plaintiff did not demonstrate the same high level of competence that Fielder did. Specifically, Plaintiff had difficulty preparing a monthly report that communicated DDWG's status to higher headquarters. (Id. ¶ 5). Plaintiff had so much trouble preparing the report that Col. Udemi eventually had to bring Plaintiff's counterpart from Hill Air Force Base to DDWG to assist Plaintiff.[9] (Id.). The fact that Plaintiff had difficulty preparing the report led Col. Udemi to believe that Plaintiff was not well-suited for the Deputy Commander position. (Id.).

Because Defendant has articulated sufficiently specific factual bases for its subjective belief that Fielder was more qualified than Plaintiff, Plaintiff bears the burden of proving that Defendant's reliance on subjective hiring criteria was a mask for racial discrimination. In response, Plaintiff has done nothing more than make unsupported, conclusory assertions that Defendant used subjective hiring criteria to discriminate against her. This is clearly insufficient to carry Plaintiff's burden. As a result, Defendant is entitled to summary judgment on Plaintiff's failure to promote claim.

### 2. Retaliation Claims

After Plaintiff filed her EEO complaint with the DLA, she contends that Defendant retaliated against her by (1) investigating her husband, (2) making her change offices, (3)

---

[9]Plaintiff challenges Col. Udemi's assessment of her performance in her Response. Plaintiff's challenges, however, consist of mere conclusory assertions. Plaintiff has not pointed to anything in the record that controverts this assertion by Col. Udemi.

issuing her a letter of warning regarding her untidy work area, and (4) questioning her about her overtime requests. To establish a prima facie retaliation claim, a Title VII plaintiff must prove that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) there is a causal connection between the protected activity and the adverse action. <u>Little v. United Technologies, Carrier Transicold Div.</u>, 103 F.3d 956, 959 (11th Cir. 1997). The second element is met only when the plaintiff can prove that the adverse action produced an injury or harm. <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 126 S. Ct. 2405, 2414 (2006). In other words, the challenged action must be "materially adverse, which...means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> at 2415 (internal quotation marks omitted). In this case, Plaintiff has not established a prima facie case of retaliation because she cannot establish that she suffered an adverse action.[10]

### a. Investigation of Plaintiff's husband

Col. Udemi contacted the Security Forces at Robins Air Force Base due to complaints from several DDWG employees that Plaintiff's husband, Willie Jacox, made undesired phone and email contact with them. (Udemi Aff. ¶ 14). The Security Forces then conducted an investigation of Mr. Jacox for making the improper communications. (Id.). This investigation did not result in Defendant taking any legal or disciplinary action against either Plaintiff or Mr.

---

[10]The Court reaches this conclusion after examining the alleged adverse actions both individually and collectively. <u>See</u> <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1456 (11th Cir. 1998) (holding that plaintiff had established an adverse employment action after considering the employer's actions collectively).

Jacox. (Id.; Jacox Dep. p. 96). Defendant simply conducted an investigation into the matter. This Court finds that the investigation of Mr. Jacox did not constitute an adverse action because neither Plaintiff nor Mr. Jacox have established how they were harmed in any way by the investigation.[11]

### b. Plaintiff's office change

Plaintiff alleges in her Complaint that Defendant retaliated against her by ordering that she change offices. Defendant has pointed to facts in the record establishing that Plaintiff was not ordered to change offices, but that she was offered a more preferable office location and accepted. (Udemi Aff. ¶ 12). Plaintiff has not provided evidence that controverts this fact. Again, at the summary judgment stage, Plaintiff cannot create a genuine issue of material fact by relying on the conclusory assertions contained in her pleadings and briefs. Accordingly, this Court finds that offering an employee a more desirable office location is not a materially adverse action.

### c. Warning letter

In February 2005, Fielder issued a letter of warning to Plaintiff regarding Plaintiff's untidy work area. This letter had no effect on Plaintiff's employment. It was not filed in Plaintiff's official personnel folder, and it did not result in any disciplinary action against

---

[11]Even if the investigation did constitute an adverse action, Defendant has established a non-retaliatory reason for the investigation. Defendant has asserted that it investigated Mr. Jacox because he made improper contact with several DDWG employees, not because Plaintiff filed a charge of discrimination. Plaintiff has not put forward any evidence to support a finding of pretext. As a result, Plaintiff's claim would fail even if this Court found that the investigation constituted an adverse action.

Plaintiff. As a result, this Court concludes that the letter of warning Plaintiff received was not a materially adverse action.

### d. Questioning about overtime requests

Last, Plaintiff contends that she was retaliated against when Fielder questioned her about some of her overtime requests. The evidence is undisputed that Fielder never denied any of Plaintiff's overtime requests. (Fielder Aff. ¶ 8; Jacox Dep. p.101-103). Questioning an employee about an overtime request is not a materially adverse action.

## C. ADEA Claim

The ADEA does not prohibit employers from treating older employees more favorably than younger employees. General Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004). In this case, Fielder is two years older than Defendant. (Fielder Aff. ¶ 1; Jacox Dep. p. 64). As a result, even if Plaintiff was not promoted because she is two years younger than Fielder, Plaintiff's ADEA disparate treatment claim still fails as a matter of law because the ADEA does not prohibit reverse age discrimination. Plaintiff's retaliation claim fails for the same reason that her Title VII retaliation claim fails–that is, she did not suffer an adverse action.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. Plaintiff's Motion to End Discovery and Set a Trial Date is therefore denied as moot.

**SO ORDERED**, this the 14th day of February, 2008.

                              <u>/s/ Hugh Lawson            </u>
                              **HUGH LAWSON, Judge**

dhc